## FRESNO LOAN & SAVINGS BANK v. HUSTED et al.

### Sac. No. 257; June 17, 1897.

#### 49 Pac. 195.

**Mechanic's Lien—House on Another's Lot.—A** Went into Possession of certain lots, then owned by B, under a contract of purchase, built and paid for a house thereon, and afterward removed the house on to the land of C, as a temporary resting place, without B's permission, and after default in the payments on the lots. Held, that it cannot be implied that B furnished the material with which the house was built, nor that A acted at the time of constructing the house as the agent of C, so as to subject C's lot to a lien under sections 1183, 1185, 1192, Code of Civil Procedure.[1]

**Mechanic's Lien—House on Another's Land—Notice.—C** was not required to post written notice upon this building within three

---

[1] Cited in note in Ann. Cas. 1912B, 19, 20, on nature of improvement for which mechanic's lien may exist.

days after it was moved on his lots, under section 1192, supra, in order to escape liability, as the house, by agreement, was to remain on the lots in question but a few days, and was therefore personal property while it rested there.

APPEAL from Superior Court, Fresno County; E. W. Risley, Judge.

Action brought by the Fresno Loan and Savings Bank to enforce a materialman's lien against Mary Husted and W. R. Flannagan. Plaintiff appeals from the judgment of the court below and its order denying a motion for a new trial. Affirmed.

Horace Hawes for appellant; Frank H. Short, F. E. Cook and Strother & Strother for respondents.

CHIPMAN, C.—Plaintiff, being the owner of certain lots in the city of Fresno, entered into a contract of sale thereof with defendant Mary Husted, on March 6, 1891, for the consideration of $2,000; payments to be $40 upon signing the contracts, and $40 monthly until fully paid. It nowhere appears in the transcript whether these or any payments were made, nor whether said Husted was in default in the payments. She entered into possession under the contract, however, and purchased materials of the admitted value of $277.14, and with them erected a dwelling on these lots, which she occupied. For some reason not explained, defendant Husted, about November, 1894, caused the building to be removed to the lots of defendant Flannagan. The removal took place on Sunday. Within thirty days thereafter plaintiff caused to be filed and recorded a materialman's lien upon the Flannagan lots, alleging that it furnished lumber and other building material to be used in the construction of the building in question; that the lots sought to be charged with the lien are lots belonging to defendant Flannagan; that defendant Husted, about November, 1894, entered into a contract with plaintiff, under which said materials were furnished; that she agreed to pay therefor their reasonable market value; that said materials were used in constructing said building upon the lots of said Flannagan with his knowledge and consent; that said contract has been fully performed, and said building or structure finished, etc. This action was brought to enforce the lien upon defendant Flan-

nagan's lots. Defendants answered, denying the allegations of the complaint. The cause was tried by the court, without a jury, and judgment given for defendants. The appeal is from the judgment and from the order denying a new trial.

The court found against all the allegations of plaintiff's complaint except it found that defendant Flannagan owned the lots to which the building was removed, but it found also that "it was not built or located thereon permanently, but was merely, by an arrangement between the defendants Flannagan and Husted, temporarily placed and allowed temporarily to remain upon the said lots, with the understanding that it might be removed at any time by the defendant Mary Husted." This finding as to the understanding between the defendants is warranted by the evidence. The court finds, as alleged in the lien and complaint, that the building was placed on the Flannagan lots about November 25, 1894, and that plaintiff filed its claim of lien in due form within thirty days thereafter; but the court finds "that the statements and affirmations of said lien were false in fact; that the plaintiff then had no claim or demand justly due or enforceable against said defendants, or either of them, with or without offsets, and the said materials were not furnished by the persons stated in said claim of lien or at all." The evidence sustains this finding. It seems to me the case lies in a nutshell, and that there is no demand upon us to follow plaintiff's counsel in his excursion through the reported cases of this character, and into the wide domain of general law to which his learned brief invites us.

The undisputed facts upon which the case rests are: That defendant Husted went into possession of certain lots, then owned by plaintiff, under a contract of purchase; that she built and paid for the house in controversy on these lots (whether the house was attached to the soil, and became a part of the freehold, is very doubtful from the evidence; indeed, the evidence would warrant a finding that it was not so attached, but the fact, in my view, is unimportant); that she removed the house, and no permission was given her by plaintiff to do so, and no right was given her by the terms of her contract to remove the house; that, in placing the house upon Flannagan's lots, it was only as a temporary resting place; that Flannagan knew nothing about defendant Husted previously, nor of her contract with plaintiff,

nor where the house came from that found its way to his lots. Flannagan testified: "Somewhere about November, about the first, Mr. Hague came to me; wanted to know if I would allow a poor woman to move her house on my lots for a short time. I told him, 'Yes.' I believe he said she would only want it to stay there a short time, or that she might buy my lots; and under these circumstances I let him move it there— told him he could. I did not know who the lady was. That is all I know about it. It was moved on the lots on Sunday. Mr. McKinzie [business agent of plaintiff] came to the store on Monday morning, and asked me about it. That was the first I knew he or the bank had any connection with it. I did not know Mrs. Husted at all until after the house was on the lots; never had any talk with her at all.'' It was not disputed that defendant Husted bought and paid for the materials in the house, and caused it to be moved. The evidence also showed that the house, after removal to Flannagan's lots, "rested on mudsills on top of the ground.''

The facts necessary to be alleged in the claim of lien, and that were alleged—to wit, that plaintiff "has furnished lumber and other building material to be used in the construction of that building or structure," etc.; and that "Mrs. Mary F. Husted is the name of the person who," etc., "as agent of such owner at Fresno, in the state of California, entered into a contract with this claimant under and by which said materials were furnished, and the following is a statement of the terms, time given, and conditions of said contract," etc.; and "that said contract has been fully performed on the part of claimant"—are all found to be untrue, and it is only by some presumption of law that the allegations of the claim can be said to be true in any sense. They were not true in fact, and the court properly so found. Their truth, and the truth that a contract for furnishing the materials was made by defendant Husted with plaintiff, all rests, by implication, upon the original contract of sale of the plaintiff's lots to defendant Husted. To put it in plain phrase: It is claimed that, because defendant Husted made a contract to purchase plaintiff's lots, therefore, when she built a house thereon at her own expense, it was to be implied that the plaintiff furnished the material; that she was then acting as the agent of Flannagan, who owned the lots to which the house was long afterward removed, but who

did not know her, and had never seen her, and never heard
of any contract between her and plaintiff as to the purchase
of plaintiff's lots; that, as such agent of Flannagan, she
entered into a contract with plaintiff under which the ma-
terials were furnished; and that plaintiff performed its part
of the contract by furnishing the materials, and paying for
them. All this is to be implied as true, against the actual
facts to the contrary, in order to sustain the lien and the
action.

By section 1183 of the Code of Civil Procedure, material-
men are given a lien for materials used in the construction
of any building "upon the property upon which they have
bestowed labor, or furnished materials, for the value of such
labor done and materials furnished, whether at the instance
of the owner or of any other person acting by his authority."
The lien here given is upon the property upon which labor is
bestowed (in this case the house in question). By section
1185 of the same code it is provided that "the land upon
which any building . . . . is constructed, together with a
convenient space about the same, . . . . is also subject to the
lien, if, at the commencement of the work, or of the furnish-
ing of the materials for the same, the land belonged to the
person who caused said building . . . . to be constructed."
By section 1192 of the same code it is provided that "every
building . . . . mentioned in section 1183 of this code,
. . . . constructed upon any lands with the knowledge and
consent of the owner, . . . . shall be held to have been con-
structed at the instance of such owner, . . . . and the inter-
est owned or claimed shall be subject to any lien filed in
accordance with the provisions of this chapter, unless such
owner . . . . shall within three days after he shall have ob-
tained knowledge of the construction . . . . give notice that
he will not be responsible by posting notice in writing," etc.

The building had been completed for some time before
removal (how long does not appear), and was occupied at
the time of removal, and the furniture remained in it dur-
ing removal. When it was constructed, there was no inten-
tion to remove it to the Flannagan lots. I cannot conceive
how plaintiff can have a lien on Flannagan's lots for mate-
rials it never furnished nor paid for, nor authorized to be
furnished, nor agreed to be responsible for, which materials
were used in the construction and completion of a house

erected on its own land by a stranger to Flannagan, and without any authority whatever from him, and without his knowledge. The evidence justifies the finding of the court that .the building was removed to his lot, not to remain, but to rest there temporarily, as an accommodation to a woman he had not then seen or known. The evidence shows that, when the bank manager tracked the house to the Flannagan lots on Monday morning (the house was moved on the previous Sunday), Flannagan told the manager that he knew nothing about where the house came from, but supposed it belonged to the poor woman whose house he had been requested to allow to be put on his lots; that he did not know who she was, nor that the bank had anything to do with it, or had any interest in it. Waiving the question whether a lien could attach at all upon lots to which a completed building has been removed bodily, and waiving other questions raised in the briefs—for example, whether the house was constructed on his lots—I do not think Flannagan was called upon, under the circumstances, to post written notice upon this building within three days after it was removed to his lots in order to relieve himself from responsibility. It became no part of the realty. By agreement, it was to remain but a few days. He could not have successfully resisted defendant Husted's right to remove it. It was personal property when it got to his place, and while resting there, whatever it might be regarded while on plaintiff's lots. The alleged lien cannot be sustained upon Flannagan's lots. Whether there is a lien upon the building need not be considered, for none is claimed. It seems to me plaintiff has wholly mistaken its remedy.

Appellant claims that, under any circumstances, defendant Flannagan is liable for money had and received. In an appropriate action sustained by competent proof, if it exists, possibly he may be so liable. Flannagan makes no claim to the house. It is not alleged or shown that he has wrongfully converted it. So far as we know, it may have been since removed from his lots by defendant Husted. No demand has been made upon him for a return of the house to its former situs, nor for its possession, nor for its value. He has not been shown to have had any such knowledge, as to the removal of the house to his lots, as would make him a cotrespasser in the removal. The pleadings in the case

present no issue upon which defendant Flannagan can be made to surrender the property, or, failing to do so, to pay its value. The judgment of the court and its order overruling plaintiff's motion for a new trial should be affirmed, and it is so recommended.

We concur: Belcher, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment of the court and its order overruling plaintiff's motion for a new trial are affirmed.